## Commonwealth *v.* Heck, Williams et al., Appellants.

*Criminal law—Arson—Evidence—Sufficiency.*

In a prosecution for arson, a motion for new trial because of after discovered evidence is properly refused, where the statements of

the witnesses for the defendant are indefinite, evasive and unconvincing.

In applications for a new trial where an attempt is made to show that the witnesses have confessed that they have sworn falsely at the trial, the Courts are bound to exercise a very careful scrutiny.

An appellate court will not reverse the Court below for refusing a new trial on the ground of after discovered evidence, except for clear abuse of discretion. Motions of this kind are to be received with caution, because there are few cases tried in which something new may not be produced and because it tends very much to perjury, to admit new evidence after the parties who have lost the verdict, have had an opportunity to discover the adversary's strength and their own weakness.

Argued December 14, 1927.   Appeals No. 366 and 368, October T., 1927, by defendants from judgment of Q. S., Berks County, September Session, 1927, No. 199, in the case of Commonwealth of Pennsylvania v. Clarence Heck, Harry Williams, Alvin Strausser and Russel Strausser. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Affirmed.

Indictment for arson. Before SCHAEFFER, P. J., and STEVENS and MAYS, JJ.

The facts are stated in the opinion of the Superior Court.

Petition for a new trial. Court refused the petition. Defendants Alvin and Russel Strausser appealed.

*Error assigned* was the refusal of the petition for the new trial.

*A. H. Rothermel,* Assistant District Attorney, and with him *David F. Mauger,* District Attorney, for appellee.

*R. G. Bushong* of *Bushong & Craumer,* for appellants.

OPINION BY TREXLER, J., March 2, 1928:

There were four jointly indicted, charged with the willful and malicious burning of a building of another, not parcel of a dwelling house. Two of them, Heck and Williams, pleaded guilty. The other defendants, Alvin and Russel Strausser, stood trial and were convicted. No stenographer was employed at the trial, but the trial judge, from the notes taken by him, has given us a narrative as to what in substance the witnesses testified. It appears that on the morning of the 20th of August, 1927, a garage, the property of the Chief of Police of the Borough of Hamburg, was burned. The Commonwealth produced Heck and Williams who were each about nineteen years of age, who, as stated, pleaded guilty at the time of the trial. Heck testified, on the evening of August 19th, he and Williams went to the restaurant stand and gas station of Russel Strausser, a place where young folks were accustomed to go and dance and where Russel Strausser and one or more women lived, one of them being Anna Gensemer, a young married woman, living apart from her husband. Heck and Williams left, but returned about 11:30 in the evening and Strausser engaged them in a conversation stated that he had some difficulty with the State Police and Chief of Police, Lewars, and proposed that Williams burn down Lewars' garage. Williams replied that he would have to see Heck, then the two Straussers and Heck and Williams talked together. Alvin speaking first, offered the boys $5 for the job, to which Russel agreed and said he would pay half the money. The boys, not knowing where the garage was, Alvin got into Heck's car and drove along into Hamburg and pointed out the garage. He then returned to Strausser's place where Alvin procured and placed in Heck's car a gallon glass jug of gasoline. Shortly before 1:00 o'clock, Heck and Williams drove into Hamburg and set fire to the garage, returned to Strausser's place, reported to

him what they done and were told by him to come the following afternoon to get the money. On the afternoon of the 20th, they went to Russel Strausser's place and received the money and were told by Alvin Strausser they had made a good job of it and should keep quiet about it. They testified to other threats made by Alvin Strausser against Lewars. On the evening of the 20th, Heck and Williams were arrested by the State Police and confessed their part in the burning and implicated the Straussers. Heck and Williams were corroborated in a number of respects. They were seen at Russel Strausser's place at the time they testified that they were there. Alvin Strausser was seen accompanying Clarence Heck in the latter's car when Heck says Strausser pointed out the Lewars garage. Alvin Strausser admitted that he did not tell the truth, when he denied that the boys had been at Russel's place and received the money on the afternoon of the 20th, as they testified. The defendants' testimony denied any knowledge of the burning. They, however, admitted paying the other defendants $5.00 on the afternoon of the 20th for a revolver and a keg, to contradict the testimony that when the money had been paid, Russel Strausser said, "Here is the money for the job." Alvin Strausser admitted that when arrested he said "I knew they would blame me for this."

The jury rendered a verdict of guilty and the motion for a new trial was made which was denied, but when the defendants were called for sentence on October 15, 1927, counsel presented a petition praying for a new trial. The petition was accompanied by two affidavits, one by Anna Gensemer, Celia Sattenstein and Charles Heim and the other by Anna Gensemer and Celia Sattenstein, having reference to a certain statement made by Harry Williams, one of the defendants. There was a time fixed for the hearing; testimony was heard and the court promptly refused the prayer of the petition-

ers without hearing any evidence offered by the Commonwealth.

The court, in its opinion, refusing a new trial comments upon the fact that the affidavits were taken on October 14th and related to events alleged to have occurred on October 11th.  The witnesses testified that they happened on October 10th.  ''This was attempted to be explained as a pure oversight on the part of the signers of the affidavit.  It is rather strange that all three should have failed to detect the alleged error.  One of the witnesses, Anna Gensemer, was patently greatly interested in Russel Strausser.  The two others were paid operatives of a detective agency, presumably familiar with the accuracy to be desired in testimony.  All that these witnesses testified to had happened within a week of the hearing and the testimony of the witnesses to the same occurrences and conversations ought to have been in substantial accord.  It was not; but even if it had been, the behavior of the witnesses upon the stand and their manner of testifying were such as to lead us to regard it as entirely untrustworthy and to call for no testimony on the part of the Commonwealth to contradict it.''

The story told by the two women was that with the investigator who was supposed to be a Denver man that they beguiled Williams out into the outskirts of the town and that he there confessed that he had sworn falsely in implicating the Straussers.  There was no effort made to get him, after this statement, to go before some magistrate or other disinterested party and have him reaffirm his alleged recantation, nor was he called by the petitioners at the hearing.  The story as presented by the witnesses is improbable.  The testimony is of a rambling character and does not carry conviction.  Evidently these parties started it with the idea of getting Williams to say that the Straussers were not guilty.  They met with disappointment in that

respect, because Williams told them at the movies that the Straussers were guilty, but according to their testimony, the effort was continued and finally successful. Their narrative lacks plausibility and the three judges sitting en banc, all came to the conclusion that it was manufactured. In applications for a new trial, where attempt is made to show that witnesses have confessed that they have sworn falsely at the trial, the courts are bound to exercise a very careful scrutiny, for if the way were made easy in such matters, there would be no end to such applications. It is hardly necessary to repeat what has so often been said that the higher courts will not reverse the court below for refusing a new trial on the ground of after discovered evidence, except for clear abuse of discretion and as long ago as 5 S. & R. 41, Chief Justice TILGHMAN remarked "Motions of this kind ought to be received with great caution; because there are few cases tried in which something new may not be hunted, and because it tends very much to the introduction of perjury, to admit new evidence after the party who has lost the verdict has had an opportunity of discovering the points both of his adversary's strength and his own weakness." Many authorities are to the same effect.

The assignments are overruled. As to Alvin Strausser, in No. 366, October T., 1927, the judgment is affirmed and the record remitted to the court below and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas. A similar order as to Russel Strausser, in No. 368, October Term, 1927, is directed to be entered.